[No. 10739.   *En Banc.*   October 9, 1912.]

THE STATE OF WASHINGTON, *on the Relation of Otto A. Case, Auditor etc., Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY, *George A. Joiner, Judge, Respondent.*[1]

ELECTIONS—PRIMARY ELECTIONS—RETURNS — DUTY TO CANVASS— PREPARATION OF BALLOTS—WHO MAY QUESTION—INTEREST OF AUDITOR. The county auditor, charged with the duty of printing on the election ballots separately the names of judicial candidates who received a majority of all votes cast, has no such interest in the matter as to entitle him to maintain an action to secure a count of the total number of ballots cast, without which such majority candidates could not be determined, where the canvassing board failed to determine the question; since his duty as auditor is ministerial and limited to printing such names separately as affirmatively appear from the records of the canvassing board, on file in his office, to have received a majority of all the votes cast; such returns being conclusive on him in the absence of a proceeding in behalf of any interested party.

Certiorari to review a judgment of the superior court for King county, Joiner, J., entered September 25, 1912, upon sustaining a demurrer to the petition, in an action seeking an order of court to compel election officers to make return of the ballots cast for candidates at a primary election. Affirmed.

*John F. Murphy* and *Robert H. Evans*, for relator.

*John E. Humphries, John T. Casey, James Lawler, L. Frank Brown*, and *Carl J. Smith*, for respondent.

PARKER, J.—On September 18, 1912, this relator commenced an action in the superior court for King county, entitled, The State of Washington on the relation of Otto A. Case as auditor of King county, Washington, plaintiff, v. John E. Humphries, Carl J. Smith, James T. Lawler, John T. Casey, L. Frank Brown, et al. In his petition and affidavit upon which he rested his right to the relief prayed for in that action, he alleged the following:

[1]Reported in 126 Pac. 937.

"(1) That the relator is the duly elected, qualified and acting auditor of King county, state of Washington.

"(2) That on the 10th day of September, 1912, pursuant to the provisions of the direct primary law, an election was held in King county for the purpose, among other things, of nominating candidates for judge of the superior court of said King county. That nine of said judges were to be nominated under the provisions of said primary election act.

"(3) That the defendants, John E. Humphries, Carl J. Smith, James T. Lawler, John T. Casey, L. Frank Brown . . . . . (naming 23 others), and each of them, filed their application with relator as the auditor of King county, Washington, and became candidates for nomination to fill said position as judges of said court.

"(4) That said primary election was held for the purpose of making said nominations on the said 10th day of September, 1912, but in counting said ballots the judges and inspectors of said election in the several precincts of King county, failed to make return of the total number of ballots cast in each of said several precincts for said candidates for superior court judge, although said election officers properly counted the number of votes cast at said election in said precincts for each of said candidates separately. Through the failure of said election officials to make return of the total number of the votes cast for all candidates at said election, it is impossible for relator, as auditor of King county, to properly certify the names of said candidates, if any there are, who received a majority of all the ballots cast at said election for said position.

"(5) That under and pursuant to the provisions of chapter 101, Session Laws of 1911, it is and becomes the duty of relator to certify to such majority nominations, and to place same upon said ballot for the election to be held in King county on the 5th day of November, 1912, for said office.

"(6) That an emergency exists and relator should be permitted under the direction and supervision of the court, to proceed to count said ballots and determine who, if any among said defendants, as candidates for said position on the superior bench of said King county, are entitled to be placed upon said ballot as majority nominees, as same are defined by law.

"Wherefore, relator prays for an order of this court citing and commanding all of said defendants to appear and show cause before this court, if any they have, why said boxes should not be opened and the total number of legal ballots cast at said election for judicial candidates be ascertained, permitting relator to fulfill and discharge his statutory duties as fixed by law."

An order was issued by the superior court upon this petition, directed to the defendants, requiring them to show cause why an order should not be made as prayed for by the relator, when the defendants above named demurred to the petition upon the ground, among others, that the facts therein stated are not sufficient to constitute a cause of action. None of the other defendants made any contention before the trial court. After hearing the argument of counsel in behalf of the defendants above named, the court sustained the demurrer, when the relator electing to stand upon his petition and not plead further, judgment dismissing the action was rendered against him. Thereupon the relator caused the record of the proceedings had in the superior court to be brought here by writ of certiorari, and now prays for a reversal of the order and judgment of that court.

The argument of counsel for the relator proceeds upon the theory that it is impossible for him to determine from the returns certified by the several precinct primary election officials, who, if any, of the candidates received a majority of the votes cast at the primary election for judge of the superior court for King county, and that this renders it impossible for him to properly direct the printing of the names of such majority candidates, if there be any, upon the general election ballots separately, as provided by the laws of 1911, page 489, relating to the nomination of superior and supreme court judges, as follows:

"When there are to be elected at any general election one or more judges of the supreme court, or of the superior court of any county, the candidates for each respective office whose names are to be placed on the general election ticket shall be

determined as follows: The number of candidates equaling the number of judicial positions to be filled who receive the highest number of votes at the primary election, and an equal number of candidates for such positions, providing there are such candidates, who receive the next highest number of votes, shall be the candidates for such respective offices and their names shall appear on the general election ballot under the designation of such respective offices: *Provided, however,* That where any candidate for any such office shall receive a majority of all votes cast at such primary election for such office, the name or names of such candidates receiving such majority shall be printed separately on the general election ballot, under the designation 'Vote for ————————,' and the name or names of no opposing candidate or candidates shall be printed on such ballot in opposition to such candidate or candidates, but spaces equalling the number of such majority candidates shall be left following such name or names, in which the voter may insert the name of any person for whom he wishes to cast his ballot."

In view of the fact that there are nine judges of the superior court for King county to be elected at the approaching general election to be held in November, and that the returns of the primary election failed to show the number of ballots cast at that election, it seems clear that counsel's theory that it is impossible to determine from such returns who, if any, of the candidates chosen at the primary election were majority candidates, is correct. It does not follow, however, that the relator, as auditor for King county (and he is here in no other capacity), has any right or authority to determine the question of who, if any, of the candidates chosen at the primary election are majority candidates. The relator seems to assume that, since the county canvassing board has left undetermined, because of defective primary election returns, the question of who, if any, of the candidates are majority candidates, the duty devolves upon him to determine that question by counting the ballots, which was evidently not done by the county canvassing board, or that the duty devolves upon him to prosecute a proceeding

in the superior court with a view to having that court direct him to determine that question by counting the ballots under its supervision.

Reference to the statutes which provide for the canvassing of the primary election returns we think will render it plain that the relator has nothing to do with the determination of the question of who are majority candidates, except as he may assist in the determination of that question while a member of the county canvassing board. Section 4828, Rem. & Bal. Code, relating to the canvassing of primary election returns, provides:

"The vote for all county, city and municipal officers shall be canvassed and the returns made by the same officers and in the same manner as returns of the votes cast at general elections are by law now required to be made. Such canvassing board and other officers canvassing votes cast at such primary elections shall file with the proper officer a statement and report of such canvass which statement and report of said primary election shall contain:

"First: A statement duly certified to containing the names of all candidates voted for at the primary election with the number of votes received, and also the number of first choice votes received by each and the number of second choice votes received by each and the total number of votes received by each and for what office, said statement to be made as to each political party separately.

"Second: A statement of the names of the persons or candidates, of each political party who are nominated as hereinbefore provided. Where there is more than one person to be elected to a given office at the ensuing election, there shall be included in said statement of nominations the names of so many candidates for said office, nominated under the provisions of this act, as there are persons to be elected to said office at the ensuing election. Said statement shall, in like manner, be made separately as to each political party.

"Third: A statement of the whole number of electors registered and the number of ballots cast at said primary election."

Referring now to the general election law, we find that § 4932, Rem. & Bal. Code, provides that:

"The county auditor, chairman of the board of county commissioners and prosecuting attorney shall be the county canvassing board of election returns for all special and general county and state elections in each county."

These sections render it plain that the question here sought to be determined at the instance of the relator is to be determined by the county canvassing board, except only in so far as the auditor is to make the computation from facts determined and certified by the canvassing board, as provided by § 4828 above quoted. While he, by virtue of his office of county auditor, is a member of that board, he has no right or power to participate in the determination of the facts required to be determined and certified by the board, save as a member of that board. When it comes to the direction of the printing of the ballots for the general election, his duties are as separate and distinct from those of the canvassing board as if he had never been a member of that board. In the performance of the latter duty he is simply a ministerial officer; and in the performance of his duty of directing the printing of the ballots, he is to proceed solely upon the information furnished by the record of the canvassing of the returns of the primary election, of which he is merely the official custodian by virtue of such record being in his office. Before he can direct the printing of any majority candidates' names separately upon the election ballots, as provided by the act of 1911 above quoted, it must affirmatively appear from the record of the canvass of the primary election in his office that there are in fact such majority candidates; and in the absence of such fact affirmatively so appearing from the record of such canvass, he must proceed upon the assumption that there are no such majority candidates. We regard it as wholly immaterial to him in his official capacity (and we have seen that he is here in none other) whether there are in fact any such can-

didates or not, except as such fact may affirmatively appear from the record and certificate of the canvass made by the county canvassing board.

If this were a contest prosecuted by some candidate claiming to be a majority candidate, with the right of having his name printed on the official general election ballots separately, as provided by the act of 1911; or if this were a proceeding instituted by the canvassing board, which is charged with the duty of determining the question here involved, asking permission to open the ballot boxes and count the ballots because of the defective returns certified by the precinct election officers; or if this were a proceeding prosecuted by an elector, as such, claiming that one or more of the candidates were majority candidates; we would have a different question presented. We express no opinion as to just what right either of these would have to prosecute such a proceeding; but we are quite clear that the relator simply as county auditor has no such interest in having this question determined in the manner here sought as entitles him to prosecute this action. The record of the canvassing of the primary election returns being on file in his office, and it failing to affirmatively show that any candidate is in fact a majority candidate, it seems to us that, except he be required to certify differently by a court of competent jurisdiction, at the instance of some one whose rights may be affected by a wrong determination of that question, other than himself, his duty is plain; and that he should proceed upon the theory that there are no majority candidates.

We are of the opinion that the superior court correctly disposed of the cause, and its judgment is therefore affirmed.

MOUNT, C. J., ELLIS, CHADWICK, CROW, and GOSE, JJ., concur.

MAIN, J., took no part.